**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00294-001-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Kenneth K. Losch, | |
| Defendant. | |

Pending before the Court are numerous discovery requests made by Defendant (Doc. 59), (Doc. 72), (Doc. 79), and the Government's request for reciprocal discovery (Doc. 70 at 6 n.2). The Court heard oral argument on November 26, 2019. For reasons that follow, the Court grants in part and denies in part Defendant's discovery requests. The Government's request for reciprocal discovery (Doc. 70 at 6 n.2), (Doc. 83) is granted.

**I.  Special Agent Lace and the Prosecution Team**

Defendant requested in his Reply in Support of his Discovery Motion (Doc. 72, at 6) that the Court order the Government to disclose all "communications by and between [Special Agent William] Lace and other members of the prosecution team about the case and witnesses in the case." Defendant argues that Special Agent Lace is a member of the prosecution team, and he makes this discovery request pursuant to *Brady*/*Giglio*, Rule 16, Rule 26.2, and the Jencks Act (18 U.S.C. § 3500). (Doc. 85 at 3); (Doc. 72 at 5-6.)

The Government in turn maintains that Special Agent Lace's role in the

investigation was "limited" and that he is not part of the prosecution team. (Doc. 70, at 4 n.4.) The Government states (Doc. 82 at 3), however, that it has complied to date with its affirmative duty to seek out information in Special Agent Lace's possession that is favorable to Defendant, and that its disclosures have exceeded the scope of its obligations under Rule 16 and *Brady*. At oral argument, the Government clarified that it will review the communications of members of the prosecution team so that it can produce any impeachment material or additional Jencks Act material therein; the Government indicates that it will do so, however, closer to the time of trial.

While the Court does not find the citations provided by the parties particularly helpful in defining who constitutes a "member of the prosecution team" for purposes of the Government's forthcoming review of prosecution team emails,[1] the Court finds pursuant to a factual inquiry that under these particular circumstances Special Agent Lace was a member of the prosecution team. Special Agent Lace was present for investigatory interviews conducted by Special Agent Ross (who was the case agent at the time) and Special Agent Capello (who is presently part of the prosecution team); Special Agent Lace had various contacts with two of the founders of Advanced Green Innovations ("AGI") on unrelated investigations (which apparently yielded information pertinent to the instant case that Special Agent Lace then relayed to prosecutors); Special Agent Lace toured the AGI facility as part of his counterintelligence briefing at AGI; Special Agent Lace participated in the execution of the search warrants at AGI and was a "team leader" during the execution of the search warrants due to his familiarity with AGI; and Special Agent Lace was at one point added as a "participant to the [FBI's] investigation file" in this case by Special Agent Ross. Given this *combination* of unique facts, the Court finds that Special Agent Lace was a member of the prosecution team.

Accordingly, it is ordered that the Government treat Special Agent Lace as a member of the prosecution team when reviewing communications among the prosecution

---

[1] Whether the federal prosecutor is charged with knowledge of information possessed by certain personnel under *Brady v. Maryland*, 373 U.S. 83 (1963), is a separate inquiry from whether the Government must treat a person as part of the prosecution team when complying with its internal policies for ferreting out Jencks Act and *Giglio* material.

team for potential disclosures. Upon reviewing Special Agent Lace's communications with members of the prosecution team, the Government shall disclose such communications consistent with the deadlines set forth in the Court's prior orders (Doc. 37, Doc. 78). If the communications contain *Brady* material, for example, they shall be disclosed as promptly after discovery as possible, but no later than **March 30, 2020**. (Doc. 78 at 5-6.) In accordance with the Government's request at oral argument,[2] any impeaching material or Jencks Act material contained in prosecution team communications shall be disclosed no later than **30 days before trial**.

## II. Text Messages and the Jencks Act

Pursuant to the Scheduling Order (Doc. 37), the Government was required to produce all Jencks Act material by July 1, 2019.[3] The Government maintains (Doc. 70, at 9-10) that it has routinely captured and produced electronic communications between agents and witnesses, consistent with its obligations under the Jencks Act and Federal Rule of Criminal Procedure 26.2, and that it will produce additional Jencks Act material after it finalizes its witness list and conducts a final review of prosecution team emails and text messages. Defendant does not dispute that the Government has properly disclosed emails to date. (Doc. 72, at 9.) Instead, Defendant asserts that the Government did not properly comply with its obligation to produce text messages. (*Id*.)

The parties filed supplemental briefing addressing whether text messages can meet the definition of "statement" under 18 U.S.C. § 3500(e) and outlining the Government's disclosures to date of text messages under the Jencks Act. (Doc. 84, Doc. 87.) The parties agree that, under some circumstances, text messages may meet the definition of "statement" under 18 U.S.C. § 3500(e). The Government also averred at oral argument that it has ordered federal agents to preserve all emails and text messages exchanged

---

[2] At oral argument on November 26, 2019, the Government stated that it disclosed the FBI Form 302s in its possession, as well as email communications and rough notes, in accordance with the July 1, 2019 deadline for Jencks Act disclosures. (*See* Doc. 37). The Government asked the Court, however, to separate its general Jencks Act disclosure deadline from its deadline to disclose any Jencks Act material contained in the prosecution team communications. The Government's request is granted. Jencks Act material contained in prosecution team communications shall be disclosed no later than 30 days prior to trial.

[3] *See* note 2, *supra*.

- 3 -

between special agents and potential witnesses. The disputed questions, therefore, are: 1) whether text messages that were "exchanged to coordinate meeting places, times, and to make other logistic arrangements" constitute Jencks Act material; and 2) if so, whether such material is subject to immediate disclosure. Defendant argues that statements exchanged for the purpose of coordinating meeting places, times, and logistical arrangements "relate to" the subject matter of a witness' potential testimony, and therefore are required to be disclosed under the Jencks Act. Defendant moves for immediate disclosure of the texts. The Government agrees that text messages coordinating meeting places, times, and other logistics may potentially fall within the subset of statements that are required to be disclosed under the Jencks Act. But the Government disavows that it has any obligation to review and evaluate every federal agent's text messages at this juncture for potential Jencks Act disclosures.

Preliminarily, the Court agrees that a text message may meet the definition of "statement" as outlined in the Jencks Act. 18 U.S.C. § 3500(e) (statement means "a written statement . . . signed or otherwise adopted or approved" by the witness). The Court further agrees with Defendant that statements about meeting times, meeting locations, and other logistical arrangements may potentially relate to the subject matter of a witness' testimony.[4] It is therefore ordered that, pursuant to the Jencks Act, the Government shall disclose text messages in its possession that were sent by a Government witness or a prospective Government witness if the text message relates to the subject matter of the witness' testimony, including text messages that were exchanged to coordinate meeting places, times, and other logistical arrangements. If the Government believes that certain statements about meeting times, locations, and logistical arrangements do not relate to the subject matter of the testimony of the witness, the Government must deliver such statement for the inspection of the court in camera. 18 U.S.C. § 3500(c). Consistent with the Government's request at oral argument, the Government must disclose all text messages constituting Jencks Act material, as outlined

---

[4] The Court disagrees with Defendant, however, that text messages sent by a potential witness to a non-testifying witness are automatically required to be disclosed under the Jencks Act.

- 4 -

in this order, no later than **30 days prior to trial**.

### III. Reciprocal Discovery

Pursuant to the Scheduling Order, the close of reciprocal Rule 16 discovery is December 2, 2019. (Doc. 37.) The Court ordered supplemental briefing regarding the parties' respective positions on reciprocal discovery under Rule 16 after Defendant responded in his Reply in Support of his Motion for Discovery that the Court should "deny any attempt by the Government to impose an obligation on [Defendant] to review the Government's own data as part of [Defendant's] reciprocal discovery obligations." (Doc. 72, at 10.)

In its Supplemental Brief (Doc. 83), the Government states that it has complied with Defendant's requests for disclosures under Rule 16(a)(1)(E), and that therefore Rule 16(b)(1)(A) requires Defendant to produce the documents he intends to use in its case-in-chief. (Doc. 83 at 1-2.) The Government argues that Defendant must comply with reciprocal discovery by disclosing any of the search warrant evidence that he wishes to use at trial, if such evidence was *not* already disclosed to Defendant by the prosecution.[5] (*Id*. at 3.) To date, the Government states that it has produced approximately 73,695 pages of documents to Defendant. In his Supplemental Brief (Doc. 86 at 2) Defendant claims, for the first time, that his reciprocal discovery obligations have not yet been triggered because the Government has not met its obligation under Rule 16(a)(1)(E)(ii) to *designate* the material within its disclosures that the Government intends to use in its case-in-chief at trial.

Rule 16(b)(1)(A) states that "[i]f a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy . . . items if: (i) the item is within the

---

[5] Not all the search warrant material was made available to the prosecution. After the search warrants were executed at AGI in December 2015, AGI asserted a blanket claim of privilege as to all items seized by the Government. (Doc. 83 at 2.) Through a walled-off filter team, evidence in the FBI database was sent to the prosecution team, and that evidence was produced to Defendant during initial discovery. (*Id*.) The prosecution informed Defendant that he could access the 4 terabytes of unfiltered search warrant data by contacting a filter agent. (*Id*.) Defendant subsequently obtained the 4 terabytes of unfiltered search warrant data, but the prosecution team still does not have access to it.

defendant's possession, custody, or control; and (ii) the defendant intends to use the item in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). Rule 16(a)(1)(E) requires the Government to permit the defendant to inspect and copy all items in the Government's possession that are material to the defense, that the government intends to use in its case-in-chief, or that were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E)(i)-(iii).

To support his argument that his reciprocal discovery obligations have not been triggered, Defendant cites *United States v. Crowder*, 325 F.Supp.3d 131 (D.D.C. 2018), where a district judge of the United States District Court for the District of Columbia acknowledged that "the text [of Rule 16(a)(1)(E)(i)-(iii)] is less clear as to how specific the government's disclosure must be to 'compl[y]' with a defendant's Rule 16(a)(1)(E) request," but nonetheless held that the defendant's reciprocal discovery obligations are not triggered until the Government identifies the exhibits, documents, and other evidence it intends to use its case-in-chief. *See Crowder*, 325 F.Supp.3d at 135-36.

As the Court indicated at oral argument, it declines to follow *Crowder*. First, while district court opinions may be relevant for their persuasive authority, this Court is not bound by the opinion of another judge of the same or different district. *See Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977). Second, the Court notes that other district courts have decided not to read into the text of Rule 16 the requirement that the Government identify which documents it intends to use at trial. *See*, *e.g.*, *United States v. Nachamie*, 91 F.Supp.2d 565, 568-69 (S.D. N.Y. 2000); *United States v. Causey*, 356 F.Supp.2d 681, 686-87 (S.D. Tex. 2005). Third, the Government may, at the present time, intend to use in its case-in-chief all of the 76,695 pages it has disclosed, and nothing in Rule 16 prevents the Government from narrowing its list of exhibits as it prepares for trial over the next five months. *See Causey*, 356 F.Supp. at 687 (where Government agreed to provide an exhibit list to defendant in advance of trial, Government's initial disclosure of 300,000 "hot documents" was not just a "perfunctory invitation to look at the contents of a file.").

In sum, the Court declines to read into the plain text of Rule 16 the requirement

that the Government identify the evidence or exhibits within the universe of discovery documents that it intends to use in its case-in-chief. Rule 16(b)(1)(A) triggers reciprocal discovery by the defendant if he "requests disclosure under Rule 16(a)(1)(E) and the government complies . . . ." Because the Government has complied with Defendant's requests for disclosures under Rule 16(a)(1)(E), which includes disclosing the evidence in its possession that it intends to use in its case-in-chief,[6] the Court finds that Government has complied with Rule 16(a)(1)(E). Therefore, Defendant's reciprocal discovery obligations have been triggered under Rule 16(b)(1)(A).

Defendant's objection notwithstanding, at oral argument Defendant agreed to produce his initial reciprocal discovery on December 2, 2019, in accordance with this Court's prior order. (S*ee* Doc. 37.) Consistent with the parties' agreement at oral argument, it is ordered that Defendant shall continue to disclose all known items within his possession, custody, or control that he intends to use in his case-in-chief, if such items are not contained within the approximately 73,695 pages of documents that were already produced to Defendant by the prosecution. It is further ordered, consistent with the parties' agreement at oral argument, that Defendant may continue to produce such items on a rolling basis as he locates them within the 4 terabytes of data that he received from the filter team.

**IV.    Rule 12(b)(4)(B)**

Defendant additionally moves the Court to order the Government to identify its case-in-chief materials under Rule 12(b)(4)(B). (Doc. 86 at 2 n.2.) The Government responded at oral argument that reading Rule 12(b)(4)(B) to require disclosure of an exhibit list is not consistent with purpose of the Rule. The Court agrees with the Government.

Rule 12(b)(4)(B) states that "[a]t the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence, . . . request notice of the government's intent to use (in its evidence-in-chief at

---

[6] To the extent additional FBI Form 302s are generated, the Government indicated at oral argument that it will disclose them on a rolling basis.

trial) any evidence that the defendant may be entitled to discover under Rule 16." As the parties agreed at oral argument, the purpose of Rule 12(b)(4)(B) is to ensure that a defendant "can make his motion to suppress prior to trial." *See United States v. Ishak*, 277 F.R.D. 156, 158 (E.D. Va. 2011) (citing Rule 12, Fed.R.Crim.P. Advisory Committee's note). The Rule, therefore, entitles defendants to notice of evidence that the government intends to use "only insofar as that notice would 'provide the defendant with sufficient information to file the necessary suppression motions.'" *Ishak*, 277 F.R.D. at 158 (citing cases); *United States v. Lujan*, 530 F.Supp.2d 1224, 1246 (D. N.M. 2008) ("The purpose of the rule is not to reveal the government's trial strategy, but merely to provide the defendant with sufficient information to file the necessary suppression motions.").

The Court notes that the Government's May 17, 2019 letter to Mark Paige (former defense counsel) identifies the Government's intent to use certain categories of evidence at trial, and specifically identifies its intent to introduce several of Defendant's recorded statements under Rule 12(b)(4)(B). (Doc. 83-2 at 3-4.) Based on Defendant's specific request for the Government to identify its intent to use certain statements of Defendant at trial, the Court further ordered the Government to identify with specificity by January 20, 2020, its intent to use at trial any of Defendant's statements that are discoverable under Rule 16. (Doc. 78 at 2.) Beyond his request for the Government to identify its intent to use Defendant's statements at trial, however, Defendant has not requested with specificity notice of any other potentially suppressive evidence. He simply requests (Doc. 86 at 2 n.2) that the Government identify its case-in-chief materials under Rule 12(b)(4)(B). Because Rule 12(b)(4)(B) does not require the Government to disclose its exhibit and witness lists at this time—and because Defendant does not specifically identify other potentially suppressive evidence—Defendant's request under Rule 12(b)(4)(B) is **denied without prejudice**.

## V. Exhibit Lists

The Government conceded at oral argument that the Court has inherent supervisory powers to order early disclosure of exhibit lists. *See also United States v.*

*W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively). Due to the complexities of this case and the volume of documents produced by the Government, and in order to ensure an efficient presentation at trial, the Court will order the Government to provide a preliminary trial exhibit list to Defendant no later than **45 days prior to trial**. The Government may reasonably update its exhibit list in good faith as needed thereafter. It is further ordered that Defendant provide a preliminary trial exhibit list to the Government **no later than 30 days prior to the start of Defendant's case.** Defendant may reasonably update his exhibit list in good faith as needed thereafter.

## VI. The Government's Communications with C.H.

Defendant filed a Supplemental Discovery Motion (Doc. 79), renewing his request for the Government to disclose the content of all its communications with C.H., a victim investor.[7] Defendant makes this Supplemental Discovery request under *Brady* and presents as "newly discovered" information, an excerpt of a transcript from C.H.'s sworn testimony during civil deposition on April 2, 2019. (Doc. 79-1 at 8.) Defendant also alleges in his Supplemental Discovery Motion (Doc. 79 at 8) that he is missing an FBI Form 302 for the meeting that C.H. maintains occurred with the United States Attorney's Office in February or March 2018.

The Government responds that no conversation between AUSA Rapp and C.H. ever occurred regarding the validity of AGI, that no meeting occurred between C.H. and prosecutors in February or March 2018, that it has disclosed text messages between Special Agent Capello and C.H., and that none of the previously assigned case agents had any exchanges with C.H. outside of what is documented in the FBI Form 302s. (Doc. 88 at 2-4.) The Government states that it does not intend to call C.H. as a witness because C.H. is not an integral part of the Government's case. The Government also asserts that it has no exculpatory information to disclose surrounding C.H.'s contacts with the Government.

---

[7] Defendant has not alleged that C.H. provided the Government with nondisclosed physical evidence.

The Court addresses Defendant's Supplemental Discovery Motion against the following factual backdrop. Defendant was the CEO of AGI, a company that was attempting to bring a diesel fuel injector kit to market. AGI was funded almost entirely by third-party investors. The Government alleges that in 2013, Defendant made fraudulent misrepresentations to investors about the launch date of the technology in order to induce investors. Defendant, however, maintains that he had a "good faith reasonable belief" for communicating the target launch date to investors because engineers and other top-level officers at AGI purportedly communicated to Defendant that the launch date he relayed to investors was viable.

Between October 21, 2015, and August 12, 2016, the investigation that resulted in the indictment in this case was led by AUSA Monica Klapper. (Doc. 88-2 at 2.) AUSA Kevin Rapp assisted AUSA Klapper with the investigation during that time. (*Id.*) On August 12, 2016, current counsel AUSA Edelstein was formally assigned to the investigation.[8] (*Id.*)

C.H. is a distribution manager for Arizona Blue Sky Technologies, LLC, a company alleged to have invested $1,245,000 in AGI. (Doc. 59 at 3 n.3.) To compensate C.H. for the large sums of money that he generated for AGI from other investors, C.H. apparently received a "monthly draw" on the forecasted proceeds of his investments. (Doc. 90-1 at 2.) On November 29, 2015, C.H. sent an email to Defendant, complaining to Defendant that AGI had stopped "funding [C.H.'s] monthly draw" on the monies he raised for AGI. (Doc. 90-1 at 2.) In this email, C.H. outlines the steps that he took to generate capital for AGI and reminds Defendant that he "spen[t] a lot of time walking . . . investors in off the ledge" after the "infamous December 15, 2013 launch date." (*Id.* at 3.) Then C.H. states in the email to Defendant:

> What you don't know is I've had an "off the record" inquiry from a buddy of mine who is a U.S. attorney asking if AGI is legit. I assured him it was and the delays were simply due to the technical issues not anything sketchy

---

[8] While AUSA Gary Restaino's name is listed on the indictment (Doc. 1), the record is not clear when AUSA Restaino was formally assigned to the investigation. The Government avowed at oral argument, however, that neither AUSA Restaino nor AUSA Edelstein met with C.H. in February or March 2018.

- 10 -

or inappropriate. I explained that I'm in the loop daily and it's a real enterprise with real technology. Believe me the last thing we want is some overly ambitious prosecutor looking to make a name for himself given the prominent families invested into AGI.

(*Id.*) C.H. concludes the email by pleading with Defendant to resolve the financial issues between them. (Doc. 90-1 at 4.)

In December 2015, search warrants were executed at AGI. (Doc. 85 at 4.) On January 29, 2016, AGI's counsel, Ivan Mathew, emailed a letter to AUSA Rapp, telling AUSA Rapp that C.H. "may be utilizing his personal relationship with you for personal gain."[9] (Doc. 79-2 at 2.) Mr. Mathew indicated in this letter to AUSA Rapp that C.H. was telling people that he (C.H.) had met with AUSA Rapp about matters pertaining to AGI. (Doc. 79-2 at 2.) In this same letter, Mr. Mathew told AUSA Rapp that C.H. stated there was no meeting between him (C.H.) and AUSA Rapp, and that C.H.'s statements about the meeting were "inconsistent." (*Id.* at 3.)

On January 29, 2016 (the same day), AUSA Rapp responded to Mr. Mathew, acknowledging that while he had attended high school with C.H. over thirty years ago, he had not spoken with C.H. in "many years." (Doc. 79-3 at 2.) AUSA Rapp confirmed to Mr. Mathew that he had no personal or social relationship with C.H. that would create a conflict. (*Id.*) AUSA Rapp noted he was unaware that C.H. had been involved with AGI prior to receiving Mr. Mathew's letter. (*Id.*)

The Government stated at oral argument that the FBI made its first contact with C.H. on February 7, 2017. In May 2017 and in October 2017, C.H. met with prosecutors, the documentation of which was disclosed to Defendant. (Doc. 88 at 4.) The FBI met with C.H. in July 2018 and December 2018, the documentation of which was disclosed to Defendant. (Doc. 88 at 3.) Defendant claims that C.H. also met with prosecutors in February or March of 2018, but the Government denies that this meeting occurred.[10]

---

[9] It is not clear from the record how, in 2016, Mr. Mathew made the connection that the "buddy" referenced in C.H.'s November 29, 2015 email to Defendant was allegedly AUSA Rapp.

[10] AUSA Edelstein informed the Court that she was out of the district on active military duty during the time that C.H. alleges this meeting occurred and that AUSA Restaino was otherwise engaged at that time.

(Doc. 88 at 3.)

Defendant was indicted in this case on March 19, 2019. (Doc. 1.)

On April 2, 2019, in the presence of Defendant and his counsel (Doc. 88-1 at 2), C.H. gave the following testimony under oath in a civil deposition: "three or four years ago, and I don't know if it was before or after the raid, [] I bumped into [AUSA] Rapp, and he asked me something about AGI; you know, if it was a legitimate enterprise. I think it was before the FBI raid, and I said, 'Yeah, absolutely.'" (Doc. 79-1 at 8.) C.H. further testified at the deposition that he "had a *couple* contacts" with the U.S. Attorney's Office (Doc. 79-1 at 4) (emphasis added) and later that he "*probably* met with [the United States Attorney's Office] three times . . . ." (Doc. 79-1 at 10-11.) C.H. stated in the deposition that his contacts with the United States Attorney's Office went "back to last February or March-*ish*" of 2018, but that he never provided "any paperwork, either in hard copy or electronic format" to "the U.S. Attorney, because [he does not] interact with them." (Doc. 79-1 at 4) (emphasis added.)

Defendant's former counsel, Alan Baskin, informed AUSA Edelstein about C.H.'s deposition statements,[11] including C.H.'s statement about talking to AUSA Rapp. On April 5, 2019, AUSA Edelstein sent a letter to C.H., cautioning him that his ongoing actions may be viewed as obstructive to an ongoing prosecution. (Doc. 88-3 at 2.)

On November 15, 2019, AUSA Rapp submitted a signed declaration to the Court, stating that he never had a conversation with C.H. about AGI, Defendant, or the technology associated with AGI, prior to December 2015. (Doc. 88-2 at 2.) AUSA Rapp further states that to date, he has not met with or discussed the AGI case with C.H. or anyone outside of the investigative team in his capacity as an AUSA or personally. (*Id*.) According to AUSA Rapp, C.H. approached AUSA Rapp at a high school reunion in October 2019, where C.H. "seemed intent on discussing aspects of the case with [him]." (*Id*.) AUSA Rapp maintains that he then changed the subject and the remainder of the

---

[11] Defendant only attached a portion of C.H.'s civil deposition to his Supplemental Discovery Motion, so the Court is unable to analyze the additional statements by C.H. that were purportedly of concern to Defendant's former defense counsel and the Government. (*See* Doc. 79-1.)

conversation related to their families. (*Id.*)

Based on the foregoing, the Court will **deny** Defendant's request for an evidentiary hearing **without prejudice**. The Court finds that C.H.'s deposition testimony does not inherently conflict with the Government's representation that the only meetings between the United States Attorney's Office and C.H. were in May and October 2017. Without more, the Court will not schedule an evidentiary hearing on that issue.

Regarding C.H.'s alleged meeting with AUSA Rapp, while the record contains evidence of conflicting statements by C.H., (*see* Doc. 79-2 at 3) (Mr. Mathew stating that C.H.'s statements were inconsistent); (*see also* Doc. 79-1 at 8) (C.H. testifying that he could not remember where or precisely when the alleged conversation with AUSA Rapp occurred), the Court need not make a credibility determination at this time because Defendant has not sufficiently demonstrated why the alleged conversation between AUSA Rapp and Defendant, if it occurred, is material under *Brady*. *Brady v. Maryland* requires disclosure of evidence that is both favorable to the accused and "material to guilt or to punishment." *United States v. Bagley*, 473 U.S. 667, 674 (1985) (*citing Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The *Brady* rule extends to impeachment evidence as well as exculpatory evidence. *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006). Under *Brady*, the prosecutor is required to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. *Bagley*, 473 U.S. at 675.

Here, the Government indicates that numerous persons associated with AGI, including two of its founders, have spoken at length with the Government about their beliefs regarding the legitimacy of AGI's technology, and the Government avows that those communications have been disclosed to Defendant. C.H., however, was an investor, not an AGI engineer or founder who would otherwise have been central to developing the 2013 launch date that Defendant communicated to investors. That an investor would express positive opinions about the viability of AGI's technology, is not material to Defendant's guilt.[12] Therefore, without more, the Court finds that no useful

---

[12] For this same reason, the Court questions Defendant's assertion that the alleged conversation between C.H. and AUSA Rapp would be central to a motion to suppress

purpose would be served by an evidentiary hearing to determine whether C.H. told AUSA Rapp that AGI's technology was valid. Accordingly, Defendant's request for an evidentiary hearing is **denied without prejudice**.

Accordingly,

**IT IS ORDERED granting** Defendant's request (part of Doc. 85) for the Government to consider Special Agent Lace as a member of the prosecution team when reviewing prosecution team communications for Jencks Act and impeaching material.

**IT IS FURTHER ORDRED denying without prejudice** Defendant's request (part of Doc. 85) for immediate disclosure of all communications by Special Agent Lace and other members of the prosecution team. If Special Agent Lace's communications are required to be disclosed, the Government shall disclose them consistent with the deadlines set forth herein and in prior orders (Doc. 37), (Doc. 78).

**IT IS FURTHER ORDERED granting** Defendant's request (part of Doc. 72) for disclosure of text messages pursuant the Jencks Act. The Government shall disclose text messages in its possession that were sent by a Government witness or prospective Government witness if the text message relates to the subject matter of the witness' testimony, including text messages that were exchanged to coordinate meeting places, times, and other logistical arrangements. The Government shall disclose such text messages no later than **30 days prior to trial**.

**IT IS FURTHER ORDERED granting** the Government's request (part of Doc. 70, Doc. 83) for reciprocal discovery. Defendant shall provide his initial reciprocal discovery consistent with the deadlines set forth in Doc. 37. Pursuant to the parties' agreement at oral argument, Defendant shall reasonably disclose reciprocal discovery on a rolling basis after his initial disclosures.

**IT IS FURTHER ORDERED denying without prejudice** Defendant's request (part of Doc. 86) for the Government to identify its case-in-chief materials under Rule

---

under *Franks v. Delaware*, 438 U.S. 154, 156 (1978) (where defendant makes a substantial preliminary showing that a false statement was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires a hearing).

12(b)(4)(B).

**IT IS FURTHER ORDERED** that the Government shall provide a preliminary trial exhibit list to Defendant no later than **45 days prior to trial**. The Government may reasonably update its exhibit list in good faith as needed thereafter.

**IT IS FURTHER ORDERED** that Defendant shall provide a preliminary trial exhibit list to the Government **no later than 30 days prior to the start of Defendant's case.** Defendant may reasonably update his exhibit list in good faith as needed thereafter.

**IT IS FURTHER ORDERED denying without prejudice** Defendant's request (Doc. 90) for an evidentiary hearing regarding C.H.'s communications with the Government.

**IT IS FURTHER ORDERED denying without prejudice** Defendant's Motion for Supplemental Discovery (Doc. 79).

**IT IS FURTHER ORDERED** setting an in-person status conference on **December 20, 2019, at 10:00 a.m.** in Courtroom 504 to address the Government's motion to extend the length of trial.

Dated this 4th day of December, 2019.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge