WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>v.<br><br>Kenneth K. Losch,<br><br>             Defendant. | No. CR-19-00294-001-PHX-MTL<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dismiss.  (Doc. 112.)  The Motion is fully briefed.  (Doc. 112, 120, 125.)   For the following reasons, the Motion is denied.

**I.     BACKGROUND**

Defendant Kenneth K. Losch was indicted on seventeen counts of Wire Fraud. (Doc. 4.)  At all relevant times alleged in the indictment, Defendant held a controlling interest in and maintained exclusive managerial control of Advanced Green Innovation, LLC ("AGI"), a company focused on the development and production of cutting edge green energy technologies.  (*Id*.)   The indictment alleges that between January 2013 and January 2014 Defendant devised a scheme to defraud investors of millions of dollars by soliciting funds under false pretenses and misrepresentations related to the commercialization of a conversion kit that would convert diesel semi-truck engines to run on natural gas.  (*Id*.)

Defendant now moves to dismiss the indictment. (Doc. 112.)   The Motion to

Dismiss alleges three instances of prosecutorial misconduct, two of which the Court has already denied in prior orders. Defendant argues that the Government failed to disclose the source of an exculpatory statement; he claims that the Government failed to disclose an exculpatory conversation between an AGI-insider and an Assistant United States Attorney ("AUSA"); and he asserts that the Government premised the search warrant affidavits on material misrepresentations and omissions. (Doc. 112 at 3, 9, 12.) The Court addresses each argument in turn, beginning with the ones it has previously denied.

## II. LEGAL STANDARD

The Court may dismiss an indictment on the ground of outrageous government misconduct if the conduct amounts to a due process violation. *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991) (quotations and citations omitted). To violate due process, the government misconduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice." *Id.* (*quoting United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991)).

The Court may also dismiss an indictment under its supervisory powers, even if the government misconduct does not rise to the level of a due process violation. *Barrera-Moreno*, 951 F.2d at 1091. Exercise of the Court's supervisory powers is limited to "cases of flagrant prosecutorial misconduct," *United States v. Chapman*, 523 F.3d 1073, 1085 (9th Cir. 2008), and is permissible solely to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct. *Barrera-Moreno*, 951 F.2d at 1091.

## III. DISCUSSION

### A. Alleged Conversation With C.H.

Defendant reargues that the Government committed prosecutorial misconduct under *Brady v. Maryland*, 373 U.S. 83 (1963),[1] by failing to disclose a purported conversation between an AGI-insider, C.H., and AUSA Kevin Rapp. (Doc. 112 at 9);

---

[1] *Brady v. Maryland* requires the disclosure of evidence that is both favorable to the accused and "material to guilt or punishment." *Brady*, 373 U.S. at 87.

(*see also* Doc. 59 at 3.)  Defendant maintains that C.H., whose company invested approximately $1.24 million in AGI, told AUSA Rapp that AGI was a legitimate company.  (Doc. 112 at 9); (Doc. 59 at 3 n.3); (Doc. 79 at 8); (Doc. 97.)  The Government has consistently denied that this conversation occurred.  (Doc. 70 at 5); (Doc. 88 at 2); (Doc. 120 at 8.)  And the Court has addressed this issue extensively in prior orders.  (*See* Doc. 94 at 9-14); (Doc. 106); (Doc. 138 at 9-11.)  No useful purpose would be served by rehashing the merits of Defendant's claim about C.H. here.  The Motion to Dismiss the indictment on this basis is denied.

### B.  Alleged Misrepresentations and Omissions

Next, Defendant argues that the Government engaged in prosecutorial misconduct by premising the search warrant Affidavits ("the Affidavit") on material misrepresentations and omissions in violation of *Franks v. Delaware*, 438 U.S. 154 (1978).[2]  (Doc. 112 at 12); (Doc. 108.)  He incorporates into the Motion to Dismiss the arguments he made in his Motion to Suppress, which the Court has previously denied. (*See* Doc. 108); (Doc. 112 at 12); (Doc. 138.)  Because the Court has already addressed Defendant's *Franks* allegations and found that there were no omissions or misrepresentations in the Affidavit that were material to the finding of probable cause, (Doc. 138), the Motion to Dismiss the indictment on this basis is denied.

### C.  Alleged Failure to Disclose Evidence Regarding the Commercialization Timeline

Finally, Defendant asserts that the Government committed prosecutorial misconduct by failing to disclose the source of exculpatory information in paragraph 26 of the Affidavit.  (Doc. 112 at 3-9.)  The Court discussed the Affidavit's extensive

---

[2] In *Franks v. Delaware*, the Supreme Court held that a defendant may challenge a facially valid search warrant affidavit by making a substantial preliminary showing that it contains intentionally or recklessly false statements, and that the affidavit purged of its falsities would not be sufficient to support a finding of probable cause. *Franks*, 438 U.S. at at 155.  The Ninth Circuit in *United States v. Stanert*, 762 F.2d 775, 781-82 (9th Cir. 1985), held that the reasoning of *Franks* logically extends to material omissions, too.  In this case there were six search warrants issued by two different magistrate judges.  (Doc. 108 at 5.) The parties agree that the affidavits presented to both magistrate judges were virtually identical.  (Doc. 111 at 4); (Doc. 138 at 2 n.1.) The Court therefore refers to the affidavits herein as "the Affidavit."

allegations in in its Order denying Defendant's Motion to Suppress and finds it necessary to recite only the following here. (*See* Doc. 138.)

In 2008 Defendant formed a business partnership with two individuals, R.M. and R.O. (Doc. 112-2, ¶ 11.) To launch their business venture, the three formed various business entities, including AGI. (Doc. 112-2, ¶ 12.a-c.) Defendant owned 51% of AGI, and as the Chief Executive Officer, he had virtually exclusive discretion in the management and control of AGI. (*Id.* ¶ 13.c, ¶ 11.a.)

AGI claimed to have exclusive technology that could convert diesel truck engines from operating on regular fuel to running on compressed natural gas. (*Id.* ¶ 17.) The success of AGI was dependent on commercializing and/or licensing these conversion kits to third parties. (*Id.* ¶ 18.a.) In total, AGI raised between $137 and $160 million from investors. (*Id.* ¶ 21.a-b.) As of 2015, however, AGI had failed to produce a working prototype, commercialize products or generate any revenue outside of investor funds. (*Id.* ¶ 18.a.)

The Affidavit alleges that Defendant oversold AGI's progress toward commercialization in order to induce investments. (*Id.* ¶¶ 5.e.i-ii, 20.a-c.) For example, Defendant originally promised investors in 2008 that the conversion kits would be ready for commercialization in 18 to 24 months. (*Id.* ¶ 38.d.) Then he promised investors that the kits would be available in 2013. (*Id.* ¶ 22.) The indictment alleges that AGI's engineering team told Defendant in January 2013 that it would take at least two more years to produce a commercial product for stationary diesel engines, assuming there were no technological or resource setbacks. (Doc. 4 at 3.) Nonetheless, Defendant relayed to investors that AGI would achieve full commercialization of the fuel injector product by December 2013, and he continued to generate investment revenue under that premise. (*Id.* at 4.) After Defendant publicly announced the December 2013 launch date to investors, AGI's engineering team persistently communicated to Defendant that the 2013 launch date was not realistic because the underlying technology for the fuel injector was failing during testing. (*Id.*) Despite there being no fuel injector to test with natural gas

in semi-truck engines in any capacity, Defendant persisted in reiterating the December 2013 commercialization launch date to investors and potential investors. (*Id.*) Defendant also purportedly staged demonstrations for potential investors to make them believe that AGI was closer to commercialization than it was. (Doc. 112-2, ¶¶ 5.e.i-ii, 20.a-c); (*see also* Doc. 4 at 5.) As of October 2015, investors were told that the conversion kits would not be available until 2017. (*Id.* ¶ 22.)

Central to the Affidavit and indictment is the additional allegation that Defendant misused investor funds for his personal expenses, including the transfer of approximately $3.6 million from AGI's accounts to Defendant's personal accounts between February 2013 and January 2014—the time frame in which he allegedly misrepresented the commercialization timeline to investors. (Doc. 112-2, ¶¶ 5.d.ii, 68, 71); (Doc. 4 at 7.)

Turning now to Defendant's remaining *Brady* allegation, he alleges that the Government has failed to disclose exculpatory evidence that supports the sworn statement in paragraph 26 of the Affidavit. (Doc. 112 at 3.) Paragraph 26 states that "[a]ccording to company sources, AGI could have produced a working conversion kit (as outlined to investors) as early as 2010 if it wasn't for [Defendant] undermining the team's efforts, redirecting the strategic vision of the company, and refusing to provide funding to the engineering department which was necessary to complete the project." (Doc. 112-2 ¶ 26.) The Government submits that the "company sources" referenced in paragraph 26 are R.M. and R.O. and that it has included specific discovery citations to support that finding. (Doc. 120 at 5.) Defendant insists, however, that there is another undisclosed company source who projected a 2010 launch date. Defendant makes this inference based on the structure of the Affidavit and the fact that neither R.M. nor R.O. mentioned 2010 as the year for probable commercialization when discussing AGI with the FBI. (Doc. 112 at 3-9.)

The Motion to Dismiss is largely devoted to poking holes in the Government's assertions regarding the identity of the "company sources" who are referenced in paragraph 26. But Defendant spends little effort addressing the most crucial tenet of

*Brady*—which requires the Government to disclose evidence *favorable to the accused* that, if suppressed, would deprive him of a fair trial. *United States v. Bagley*, 473 U.S. 667, 674 (1985) (*citing Brady*, 373 U.S. at 87) (emphasis added). The crux of the allegation in paragraph 26, consistent with the rest of the Affidavit and indictment, is that AGI was legitimately working toward commercialization of the conversion kits, and that AGI insiders believed commercialization would have been possible without Defendant's interference (including the rerouting of millions of AGI dollars to his personal accounts). Any statement by an additional AGI insider that AGI could have achieved product commercialization in 2010 without Defendant's misappropriations, is not favorable evidence to Defendant.

In any event, Defendant has not shown why the existence of an additional company source, if one exists, is not cumulative to the statements provided by R.O. and R.M. *See United States v. Kohring*, 637 F.3d 895, 902 (9th Cir. 2011) (evidence that is "merely cumulative" cannot form the basis of a *Brady* violation). The Affidavit reflects that R.O. believed AGI could have achieved product commercialization with $40 million directed to the engineering department, which Defendant refused to allocate. (Doc. 112-2, ¶ 46.) In his interview, R.O. also indicated that he believed AGI could have converted off-road racing trucks to run on hydrogen as early as 2011. (Doc. 120-2 at 4.) R.M., who invented the underlying technology, told the FBI in an interview that he believed AGI could have achieved product commercialization as early as 2008, if it were not for Defendant's "ego-maniac[] decision making." (Doc. 120-1 at 5.) These statements by R.O. and R.M. are captured by the allegation in paragraph 26 that "company sources" believed "AGI could have produced a working conversion kit (as outlined to investors) as early as 2010 if it wasn't for [Defendant] undermining the team's efforts, redirecting the strategic vision of the company, and refusing to provide funding to the engineering department which was necessary to complete the project." (Doc. 112-2, ¶ 26.) In sum, Defendant has not shown that the existence of an additional "company source" in paragraph 26 would be favorable to him or distinct from the statements already provided

by R.O. and R.M.  Accordingly, the Motion to Dismiss the indictment on this basis is denied.

## IV.   CONCLUSION

**IT IS ORDERED** denying Defendant's Motion to Dismiss (Doc. 112).

Dated this 3rd day of June, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge